**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| DORIS FOUNTAIN, LAWANDA ROWLAND, CHERYL ARMSTRONG, JENNIFER BOVE, MURIEL JOHNSON, and TINA CADOTTE <br><br> Plaintiffs, <br> v. <br><br> RETRIEVAL-MASTERS CREDITORS BUREAU, INC. d/b/a AMERICAN MEDICAL RETRIEVAL MASTERS <br><br> Defendant. | Case No. 4:16-cv-01556 <br><br> **PLAINTIFFS' ORIGINAL COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

DORIS FOUNTAIN, LAWANDA ROWLAND, CHERYL ARMSTRONG, JENNIFER BOVE, MURIEL JOHNSON, and TINA CADOTTE ("Plaintiffs") bring this action against Defendant RETRIEVAL-MASTERS CREDITORS BUREAU, INC. ("Defendant") to stop Defendant's practice of making illegal debt collection calls to the cellular telephones of Plaintiffs, and to obtain redress for injuries caused by Defendant's conduct. Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## INTRODUCTION

1. "The right to be let alone is indeed the beginning of all freedom."[1] Plaintiffs bring this action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), the Fair Debt Collection Practices Act 15 U.S.C. § 1692, *et seq.*("FDCPA"), Chapter 302 of the TEX. BUS. & COM. CODE - the Regulation of Telephone Solicitation statute in Texas ("Texas

---

[1] *Public Utilities Commission v. Pollak*, 343 U.S. 451, 467 (1952) (Douglas, J., dissenting).

TCPA"), and TEXAS DECEPTIVE TRADE PRACTICES ACT ("DTPA").

2.      Defendant is a debt collection company that engages in reckless and aggressive debt collection practices which outright ignore controlling federal and state law, and the rights of the called parties.

3.      Defendant repeatedly made unsolicited calls to Plaintiffs' cellular telephones in violation of the TCPA.  Defendant made the unauthorized and illegal calls to Plaintiffs' cell phones using an automatic telephone dialing system ("ATDS") or pre-recorded voice for the purpose of bullying Plaintiffs into paying an allegedly deficient balance.  Defendant also called Plaintiffs after they clearly stated they did not wish to be called again.  Several of Defendant's calls also violate the FDCPA, which is a statute Congress passed to prevent harassing, unconscionable, and unfair debt collection practices.

4.      Finally, Defendant's conduct violates the Texas TCPA and, in turn, the DTPA. Accordingly, Plaintiffs are entitled to recover statutory damages, actual damages, attorneys' fees, costs of court, expert fees, deposition costs, and treble damages for each and every such violation.

## PARTIES

5.      Plaintiff DORIS FOUNTAIN is a natural person and citizen of Houston, Texas.

6.      Plaintiff LAWANDA ROWLAND is a natural person and citizen of Forest Hill, Texas.

7.      Plaintiff CHERYL ARMSTRONG is a natural person and citizen of Dallas, Texas.

8.      Plaintiff JENNIFER BOVE is a natural person and citizen of Clifton Heights, Pennsylvania.

9.      Plaintiff MURIEL JOHNSON is a natural person and citizen of Warminster, Pennsylvania.

10.     Plaintiff TINA CADOTTE is a natural person and citizen of Detroit, Texas

11.     Defendant RETRIEVAL-MASTERS CREDITORS BUREAU, INC. d/b/a AMERICAN MEDICAL RETRIEVAL MASTERS is a corporation organized under the laws of the State of New York. Defendant maintains its principal office at Elmsford, New York, and may be served with process by serving its Chief Executive Officer, Russell Fuchs, 4 Westchester Plaza, Suite 110 Elmsford, New York 10523.

12.     Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION & VENUE

13.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

14.     The Court has personal jurisdiction over Defendant because it conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.  Furthermore, the exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice. For these same reasons, venue is proper in this District.

## LEGAL BASIS FOR THE CLAIMS

### The TCPA

15.     Congress enacted the TCPA in 1991 to address certain practices thought to be an invasion of consumer privacy and a risk to public safety. The TCPA and the Federal

Communications Commission's ("FCC") implemented rules prohibit: (1) making telemarketing calls using an artificial or prerecorded voice to residential telephones without prior express consent; and (2) making any non-emergency call using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice to a wireless telephone number without prior express consent.  If the call includes or introduces an advertisement, or constitutes telemarketing, consent must be in writing.[2]  Calls that include non-marketing messages require consent, but not written consent.  The TCPA grants consumers a private right of action, with a provision for $500 or the actual monetary loss in damages for each violation, whichever is greater, and treble damages for each willful or knowing violation, as well as injunctive relief.

16.     Since the TCPA's passage in 1991, the FCC has taken multiple actions implementing and interpreting the TCPA, and has issued numerous Declaratory Rulings clarifying specific aspects of the TCPA.  The most recent, FCC Omnibus Order of July 10, 2015, (the "Order") provided further protection to consumers by, among other things, clarifying that ATDS is broadly defined, confirming liability attaches to calls made to the wrong number or reassigned number, and clarifying consumers may revoke consent through reasonable methods.  *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, (July 10, 2015), available at https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order.  The Order defines an "autodialer" as equipment/software that has the future capacity to dial randomly or sequentially.  "In other words, the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities."  The Order clarifies the meaning of "capacity" and that "any call" made using a device with the capacity to

---

[2] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.  47 C.F.R. § 64.1200(f)(8).

4

serve as an ATDS requires consent under the TCPA, even if the caller is not "actually…using those functionalities to place calls" at the time. *Derby v. AOL, Inc.*, No. 5:15-CV-00452-RMW, 2015 WL 5316403, at *3 (N.D. Cal. Sept. 11, 2015).

17.     The Order also states that calls placed to the wrong number or a reassigned number are made with knowledge of the error after the first call; and consumers may revoke consent through any reasonable method, including orally: "[w]e clarify, however, that callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber.  If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such;" "[c]onsumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities."

18.     Furthermore, the TCPA established the National Do-Not-Call List, and also mandates all businesses that place calls for marketing purposes maintain an "internal" do-not-call list ("IDNC").  See 47 C.F.R. § 64.1200(d).  The IDNC is "a list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]."  *Id*.  The TCPA prohibits a company from calling individuals on its IDNC list or on the IDNC list of a seller on whose behalf the telemarketer calls, even if those individuals' phone numbers are not on the National Do-Not-Call Registry.  *Id.* at § 64.1200(d)(3), (6).  Any company, or someone on the company's behalf, who calls a member of the company IDNC is liable to that person under the TCPA.  The called party is then entitled to bring a private action under the TCPA for monetary and injunctive relief.

19.     Finally, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules."  In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

20.     Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

**The FDCPA**

21.     In 1978, Congress enacted the FDCPA in response to data showing that abusive collection practices lead to an increase in personal bankruptcy filings, marital instability, loss of employment, and invasion of personal privacy.  The FDCPA prohibits false, deceptive, misleading, harassing, abusive and offensive conduct during collection of consumer debts. *See* 15 U.S.C. § 1692a, *et seq.* In particular, the FDCPA prohibits, *inter alia*, the following practices:

- Discussing debt with a third party.  15 U.S.C. § 1692b(2)

- Contacting a third party more than one time for the purpose of obtaining debtor's location information.  15 U.S.C. § 1692d(1)

- Calling debtor's workplace if debtor notified debt collector that such calls are unwanted.  15 U.S.C. § 1692c(a)(3)

- Calling debtor before the hours of 8 a.m. or 9 p.m. 15 U.S.C. § 1692c(a)(1)

- The collector from threatening violence or the use of criminal activity towards the consumer or property.  15 U.S.C. § 1692d(1)

6

- The collector from using obscene or profane language.  15 U.S.C. § 1692d(2)

- The collector from engaging in harassing, abusive and/or oppressive conduct.  15 U.S.C. § 1692d

- The collector from making false, deceptive, or misleading statements.  15 U.S.C. § 1692e, e(10)

- The collector from stating or implying that non-payment will result in arrest or criminal prosecution.  15 U.S.C. § 1692e(4)

- The collector from threatening suit, garnishment, or seizure of property without the legal ability to do the same.  15 U.S.C. § 1692e(5)

- The collector from failing to identify itself and the purpose of the call.  15 U.S.C. § 1692e(11)

22.     The FDCPA further expressly provides a private right of action to anyone who receives prohibited collection calls.  A prevailing plaintiff under the FDCPA is entitled to recovery of actual damages (including mental anguish), a statutory penalty of $1,000, plus costs and attorneys' fees. 15 U.S.C. § 1692k(a).

**The Texas TCPA & DTPA**

23.     Enacted in 1978, Chapter 302 of the TEX. BUS. & COM. CODE is the Regulation of Telephone Solicitation statute in Texas ("Texas TCPA").  A violation of the Texas TCPA is also a violation of the TEXAS DECEPTIVE TRADE PRACTICES ACT ("DTPA") by law:

(a) A violation of this chapter is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17 (DTPA).

(b) A public or private right or remedy prescribed by Subchapter E, Chapter 17 (DTPA), may be used to enforce this chapter.

TEX. BUS. & COM. CODE § 302.303; *see also* TEX. BUS. & COM. CODE § 17.50(h) (a plaintiff can maintain a DTPA suit based on the violation of other consumer-protection statutes that have been incorporated into the DTPA). The Texas TCPA shall be liberally construed and applied to promote its underlying purpose to protect persons against false, misleading, or deceptive practices in the telephone solicitation business. TEX. BUS. & COM. CODE § 302.003.

24.     The Texas TCPA also provides much harsher civil penalties than the federal TCPA:

(a) A person who violates this chapter is subject to a civil penalty of not more than **$5,000 for each violation.**

▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪

(d) The party bringing the action also is entitled to recover **all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.**

TEX. BUS. & COM. CODE § 302.302 (emphasis added). The plaintiff can recover additional damages of **up to three times the amount of economic and mental anguish damages** for a DTPA claim. TEX. BUS. & COM. CODE § 17.50(b)(1) (emphasis added). Economic damages can be trebled if the defendant knowingly or intentionally violated the DTPA. *Id.*; *Bossier Chrysler-Dodge II, Inc. v. Riley*, 221 S.W.3d 749, 759 (Tex. App.–Waco 2007, pet denied). Mental-anguish damages can be trebled if the defendant acted intentionally. TEX. BUS. & COM. CODE § 17.50(b)(1).

## FACTS SPECIFIC TO PLAINTIFF DORIS FOUNTAIN

25.     Beginning around January 2016, Fountain began to receive calls from the number 844-505-3328, a number associated with Defendant. Since that time, Fountain has received at least 60 calls from Defendant.

26.     Fountain received all calls described above on her cellular telephone assigned a number ending in 1572.

27.     Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without first obtaining Fountain's prior express written consent.

28.     When Fountain answered the calls, there was silence before Defendant's live representative engaged on the other end of the line.

29.     Fountain repeatedly told Defendant to stop calling.  Yet, Defendant continued to call.

30.     The purpose of the calls was to collect a personal debt owed by Fountain.  Fountain asked Defendant to stop calling and reach her by mail instead, but Defendant continued to call.

31.     On at least one occasion, Defendant's live representative used profanity when referring to Fountain.

32.     Fountain never provided Defendant consent to call her for any purpose.

33.     Fountain felt the calls were an invasion of her privacy and wanted Defendant to stop calling.  Defendant ignored Fountain's multiple requests and continued to call her.  The ceaseless calls caused Fountain mental anguish and anxiety.

34.     Based on the circumstances of the calls (e.g. dead air, large volume of calls, continued calls after protest), Fountain believed Defendant called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

35.     On information and belief, Defendant's ATDS called Fountain on every occasion.

36.     The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number.

37.     Fountain is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 1572.

9

38.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

39.     Fountain did not provide Defendant with prior express written consent to place calls to her cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

40.     Fountain is a consumer who Defendant is attempting to collect from on behalf of a third party.  Accordingly, the debt allegedly owed to Defendant is a consumer debt.

41.     On information and belief, Defendant dedicates a substantial portion of its business to debt collection.  Defendant regularly engages in the practice of collecting debts.

42.     All calls Defendant made to Fountain violate 47 U.S.C. § 227, and 15 U.S.C. § 1692.

### FACTS SPECIFIC TO PLAINTIFF LAWANDA ROWLAND

43.     Beginning around September 2015, Roland began to receive calls from the number 817-203-2854, which is associated with Defendant.  At the time Rowland filed this lawsuit, she had received at least 185 debt collection calls from Defendant, sometimes multiple calls in a single day.

44.     Rowland received all calls described above on her cellular telephone assigned a number ending in 4307.

45.     Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without first obtaining Rowland's prior express written consent.

46.     Rowland answered at least one of these calls and interacted with the caller's live representative after being transferred by the dialing system.

10

47.    When Rowland answered the calls, there was a momentary pause ("dead air") before Defendant's live representative engaged on the other end of the line.

48.    Rowland told Defendant to stop calling.  Yet, Defendant continued to call.

49.    Rowland felt the calls were an invasion of privacy and wanted Defendant to stop calling.  Defendant ignored Rowland's request and continued to call her.  This caused Rowland stress and anxiety.  The calls also occupied Rowland's telephone line and interfered with her use and enjoyment of her cellular telephone, for which she paid valuable consideration.

50.    The purpose of the calls was to collect on a personal debt.

51.    Based on the circumstances of the calls (e.g. dead air, large volume of calls, repeated calls after protest), Rowland believed Defendant called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

52.    On information and belief, Defendant's ATDS called Rowland on every occasion.

53.    The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

54.    Rowland is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 4307.

55.    Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

56.    Rowland did not provide Defendant with prior express written consent to place calls to her cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

57.    Rowland is a consumer who Defendant is attempting to collect from on behalf of a third party.  Accordingly, the debt allegedly owed to Defendant is a consumer debt.

58.     On information and belief, Defendant dedicates a substantial portion of its business to debt collection.  Defendant regularly engages in the practice of collecting debts.

59.     All calls Defendant made to Rowland violate 47 U.S.C. § 227, and 15 U.S.C. § 1692.

## FACTS SPECIFIC TO PLAINTIFF CHERYL ARMSTRONG

60.     Beginning around January 2016, Armstrong began to receive calls from the number 844-505-3328, which is associated with Defendant.  Since that time, Armstrong has received at least 11 calls from Defendant.

61.     Armstrong received all calls described above on her cellular telephone assigned a number ending in 0950.

62.     Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without first obtaining Armstrong's prior express written consent.

63.     When Armstrong answered the calls, there was a momentary pause ("dead air") before Defendant's live representative engaged on the other end of the line.

64.     The purpose of the calls was to collect on a past due medical debt owed by Armstrong.

65.     Armstrong attempted to speak with Defendant's live representative in order to set up a payment plan, but was instead met with Defendant's abusive and harassing tactics.

66.     On at least one occasion, Defendant represented that the calls were from an attorney's office, implied that non-payment of the debt is a crime, implied that legal action would be taken against Armstrong unless she paid the debt, and threatened to report the debt to a credit bureau.

67.     On at least one occasion, Defendant called Armstrong before 8 A.M. and called at her place of work.

68.     Armstrong never provided Defendant consent to call her for any purpose.

69.     Armstrong felt the calls were an invasion of her privacy and wanted Defendant to stop calling.  Defendant ignored Armstrong's multiple requests and continued to call her, causing Armstrong severe anxiety and distraction from her work day.

70.     Based on the circumstances of the calls (e.g. dead air, large volume of calls, continued calls after protest), Armstrong believed Defendant called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

71.     On information and belief, Defendant's ATDS called Armstrong on every occasion.

72.     The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number.

73.     Armstrong is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 0950.

74.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

75.     Armstrong did not provide Defendant with prior express written consent to place calls to her cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

76.     Armstrong is a consumer who Defendant is attempting to collect from on behalf of a third party.  Accordingly, the debt allegedly owed to Defendant is a consumer debt.

77.     On information and belief, Defendant dedicates a substantial portion of its business to debt collection.  Defendant regularly engages in the practice of collecting debts.

13

78.     All calls Defendant made to Armstrong violate 47 U.S.C. § 227, and 15 U.S.C. § 1692.

## FACTS SPECIFIC TO PLAINTIFF JENNIFER BOVE

79.     Beginning around March 2015, Bove began to receive calls from the number 844-505-3328. This number is associated with Defendant.  Since that time, Bove has received at least 33 calls from Defendant, sometimes multiple calls in a single day.

80.     Bove received all calls described above on her cellular telephone assigned a number ending in 7285.

81.     Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1).

82.     When Bove answered the calls, there was "silence at first, and a click" before Defendant's live representative engaged on the other end of the line.

83.     The purpose of the call is to collect on a debt.  Bove disputes owing the debt, and informed Defendant's live representative of her dispute.  She further disputed the debt to the various credit bureaus through www.creditkarma.com.  Yet, Defendant continued to call.

84.     Bove never provided Defendant consent to call her for any purpose.

85.     Bove felt the calls were an invasion of her privacy and wanted Defendant to stop calling.  Defendant ignored Bove's requests and continued to call her.

86.     Based on the circumstances of the calls (e.g. dead air, large volume of calls, continued calls after protest), Bove believed Defendant called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

87.     On information and belief, Defendant's ATDS called Bove on every occasion.

88.     The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number.

89.     Bove is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 7285.

90.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

91.     Bove is a consumer who Defendant is attempting to collect from on behalf of a third party.  Accordingly, the debt allegedly owed to Defendant is a consumer debt.

92.     On information and belief, Defendant dedicates a substantial portion of its business to debt collection.  Defendant regularly engages in the practice of collecting debts.

93.     All calls Defendant made to Bove violate 47 U.S.C. § 227, and 15 U.S.C. § 1692.

## FACTS SPECIFIC TO PLAINTIFF MURIEL JOHNSON

94.     Beginning around March 2015, Johnson began to receive calls from the number 844-505-3328. This number is associated with Defendant.  Since that time, Johnson has received at least 23 calls from Defendant, sometimes multiple calls in a single day.

95.     Johnson received all calls described above on her cellular telephone assigned a number ending in 2034.

96.     Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1).

97.     When Johnson answered the calls, there was "silence at first" before Defendant's live representative engaged on the other end of the line.

98.     The purpose of the call is to solicit business from someone other than Johnson.

99.     When Johnson answered the calls, the live representative asks for "Mr. Brown." Johnson has informed Defendant's live representative that she is not "Mr. Brown," that she is not interested in the offered product, and to take her off of Defendant's call list.

100.     Despite all of Johnson's requests, Defendant continued to call.

101.     Johnson never provided Defendant consent to call her for any purpose.

102.     Johnson felt the calls were an invasion of her privacy and wanted Defendant to stop calling.  Defendant ignored Johnson's requests and continued to call her.  The calls occupied Johnson's phone line, caused her to lose minutes on her plan, and interfered with her use and enjoyment of her cell phone for which she paid valuable consideration.

103.     Based on the circumstances of the calls (e.g. dead air, large volume of calls, continued calls after protest), Johnson believed Defendant called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

104.     On information and belief, Defendant's ATDS called Johnson on every occasion.

105.     The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number.

106.     Johnson is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 2034.

107.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

108.     At a minimum calls Defendant made to Johnson after she told Defendant to stop calling violate 47 U.S.C. § 227(b)(1).

## FACTS SPECIFIC TO PLAINTIFF TINA CADOTTE

109.   Beginning around March 2016, Cadotte began to receive calls from the number 844-505-3328. This number is associated with Defendant.  Since that time, Cadotte has received at least 17 calls from Defendant, sometimes multiple calls in a single day.

110.   Cadotte received all calls described above on her cellular telephone assigned a number ending in 3236.

111.   Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1).

112.   When Cadotte answered the calls, there was a pause ("dead air") before a recording prepared by Defendant played on the other end of the line.

113.   The purpose of the calls was to solicit business, and Defendant was trying to reach a person other than Cadotte.  When Cadotte answered the phone, the recording repeatedly asked for a person Cadotte does not know.

114.   Cadotte never provided Defendant consent to call her for any purpose.

115.   Cadotte felt the calls were an invasion of her privacy and wanted Defendant to stop calling.  The calls occupied Cadotte's phone line, caused her to lose minutes on her plan, and interfered with her use and enjoyment of her cell phone for which she paid valuable consideration.

116.   Based on the circumstances of the calls (e.g. dead air, large volume of calls, continued calls after protest), Cadotte believed Defendant called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

117.   On information and belief, Defendant's ATDS called Cadotte on every occasion.

118.   The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number.

119.   Cadotte is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 3236.

120.   Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

### FIRST CAUSE OF ACTION
### ALL PLAINTIFFS
#### (VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*)

121.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

122.   The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq*. and 47 C.F.R. §64.1200, *et seq.*

123.   As a result of Defendant's violations of 47 U.S.C. § 227, *et seq*., and 47 C.F.R. §64.1200, *et seq.,* Plaintiffs are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

124.   Plaintiffs are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### SECOND CAUSE OF ACTION
### ALL PLAINTIFFS
#### (KNOWING AND/OR WILLFUL VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*)

125.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

126.   The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of

the above cited provisions of 47 U.S.C. § 227, *et seq*. and 47 C.F.R. §64.1200, *et seq.*

127.     As a result of Defendant's violations of 47 U.S.C. § 227, *et seq*., and 47 C.F.R. §64.1200, *et seq.* Plaintiffs are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

128.     Plaintiffs are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### THIRD CAUSE OF ACTION
### PLAINTIFFS FOUNTAIN, ROWLAND, ARMSTRONG, AND BOVE
#### (VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 *ET SEQ.*)

129.     Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

130.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above cited provisions of 15 U.S.C. § 1692d(2), 15 U.S.C. § 1692d, and 15 U.S.C. § 1692e(5).

131.     As a result of Defendant's violations of the FDCPA, Plaintiffs are entitled to an award of $1,000.00 in statutory damages, for each and every violation, and actual damages, including mental anguish.

### FOURTH CAUSE OF ACTION
### PLAINTIFFS FOUNTAIN, ROWLAND, ARMSTRONG, AND CADOTTE
#### (VIOLATION OF THE TEXAS REGULATION OF TELEPHONE SOLICITATIONS
#### Chapter 302 of the TEX. BUS. & COM. CODE)

132.     Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

133.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the Texas TCPA, including but not limited to each and every one of the provisions of Chapter 302 of the TEX. BUS. & COM. CODE.

134.   As a result of Defendant's violations of the Texas TCPA, Plaintiffs are entitled to an award of statutory damages in the amount of $5,000, for each and every violation, and actual damages including mental anguish, all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

**FIFTH CAUSE OF ACTION**
**PLAINTIFFS FOUNTAIN, ROWLAND, ARMSTRONG, AND CADOTTE**
(VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT
Chapter 17 of the TEX. BUS. & COM. CODE)

135.   Plaintiffs hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

136.   The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the Texas TCPA, which automatically results in a violation of the DTPA.

137.   A violation of the Texas TCPA is also a violation of the TEXAS DECEPTIVE TRADE PRACTICES ACT ("DTPA") by law:

"(a) A violation of this chapter is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17 (DTPA).

(b) A public or private right or remedy prescribed by Subchapter E, Chapter 17 (DTPA), may be used to enforce this chapter."

TEX. BUS. & COM. CODE § 302.303; *see also* TEX. BUS. & COM. CODE § 17.50(h) (a plaintiff can maintain a DTPA suit based on the violation of other consumer-protection statutes that have been incorporated into the DTPA).

138.   As a result of Defendant's violations of the DTPA, Plaintiffs are entitled to an award of actual damages, treble damages for the Texas TCPA violations ($15,000 per violation), costs of court, and attorney's fees.

**ATTORNEY'S FEES**

139.    Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

140.    Plaintiffs are entitled to recover reasonable attorney fees and request the attorneys' fees be awarded.

**JURY DEMAND**

141.    Plaintiffs demand a jury trial on all issues triable to a jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

- An award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227, *et seq*.;

- An award of $1,500.00 in statutory damages, for each and every willful and/or knowing violation, pursuant to 47 U.S.C. § 227, *et seq*.;

- An award of $1,000.00 in statutory damages, for each and every violation, pursuant to 15 U.S.C. § 1692, *et seq*.;

- An award of $5,000.00 in statutory damages, for each and every violation, pursuant to Chapter 302 of the Texas Business & Commerce Code, *et seq*.;

- Actual damages, including mental anguish.

- An award of $15,000.00 in statutory damages, for each and every violation, pursuant to Chapter 17 of the Texas Business & Commerce Code, *et seq*.;

- Preliminary and permanent injunctive relief enjoining Defendant, its agents, servants and employees, and all persons acting in concert with them, from engaging in, and continuing to engage in, the unlawful calls made with

21

automated dialing systems to cellular phones, and enjoining Defendant from engaging in abusive and oppressive collection practices as outlined in this Complaint.

- Attorneys' fees, costs and any and all other relief deemed just and proper.

Dated: June 2, 2016                                    Respectfully Submitted,

                                                    */s/ Jarrett L. Ellzey*
                                                    W. Craft Hughes
                                                    Jarrett L. Ellzey

**HUGHES ELLZEY, LLP**
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335
E-Mail: craft@hughesellzey.com
           jarrett@hughesellzey.com

Bryant Fitts
Texas Bar No. 24040904
bfitts@fittslawfirm.com
**FITTS LAW FIRM, PLLC**
2700 Post Oak Blvd., Suite 1120
Houston, Texas 77056
Phone (713) 871-1670
Fax (713) 583-1492

**ATTORNEYS FOR PLAINTIFFS**